# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**A.B., a minor, by ANNIE D. BAEZ, his next friend, parent and natural guardian,**

        **Plaintiffs,**

**-vs-**                                                    **Case No. 6:05-cv-802-Orl-28KRS**

**SEMINOLE COUNTY SCHOOL BOARD & KATHLEEN MARY GARRETT,**

        **Defendants.**

## ORDER

This cause came on for consideration after a hearing on the Motion to Exclude From Evidence Plaintiff['s] Expert Testimony, doc. no. 83. In the motion, Defendant Kathleen Mary Garrett asks the Court to preclude Plaintiff A.B. from relying upon the testimony of the following expert witnesses, with respect to dispositive motions and at trial: Timothy Vollmer, Ph.D., Bennett Leventhal, M.D., Katherine Trapani, Ph.D., and Robert Pensa, M.D. Plaintiff opposes the request. Doc. No. 85.

I held a hearing at which the parties relied upon the experts' reports and depositions on file in the case.[1] At the hearing, counsel for Defendant Seminole County School Board (School Board) also argued in support of the motion. The matter is now ripe for resolution.

---

[1] A.B. also submitted affidavits of each expert, which track the experts' respective reports. The parties were given an opportunity to present testimony, but they did not do so.

**I.     APPLICABLE LAW.**

Federal Rules of Evidence 702, 703, and 704 govern the consideration of expert testimony. In *Daubert v. Merrell Dow Pharmeceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the United States Supreme Court required the Court to act as a gatekeeper to ensure that unreliable expert testimony is not relied upon.

The United States Court of Appeals for the Eleventh Circuit set forth three factors that the proponent of expert testimony must show in order to satisfy the *Daubert* requirements:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and,
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). The *Daubert* test of reliability is a flexible one; the Court has broad latitude in deciding both how to determine reliability as well as ultimately deciding whether the opinion is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

**II.    ANALYSIS.**

"This action arises from allegations by the Plaintiff, A.B., an autistic child, by and through his mother[,] ANNIE D. BAEZ . . ., that Co-Defendant, Kathleen Garrett . . ., a former Seminole County School teacher[,] allegedly violated A.B.'s constitutional rights by physically and emotionally abusing A.B. while A.B. was a student at South Seminole Middle School . . . ." Doc. No. 117 at 2. Garrett

argues, in essence, that the testimony of the expert witnesses that are the subject of the motion cannot be helpful to the jury because the facts on which they rely will not be established at trial. Furthermore, her counsel submitted during oral argument that the three experts who opine about injuries suffered by A.B., specifically Drs. Vollmer, Leventhal, and Pensa, are not reliable because they opine generally about how autistic children might be damaged under the circumstances presented in this case rather than how A.B was damaged.[2] Thus, Garrett contends that permitting the experts to testify in this case would violate the requirement stated in *Kumho* that the experts reliably determine the injuries suffered by *this plaintiff*, not a hypothetical autistic child. *See Kumho*, 526 U.S. at 154 ("The relevant issue was whether the expert could reliably determine the cause of *this* tire's separation.").

      *A.      Factual Basis for Experts' Opinions*.

Whether the facts on which the experts rely are supported by evidence must be determined after consideration of the evidence presented. Accordingly, this portion of the motion will not be ripe for consideration until the evidence is presented at trial. The presiding district judge will, of course, also consider whether the evidence supporting the dispositive motions and responses provides sufficient evidentiary support for the experts' opinions.

---

[2] Counsel for the School Board also contended at the hearing that Dr. Trapani, who renders opinions about the propriety of the School Board's policies and procedures, does not have sufficient training and experience regarding public schools in Florida to support her opinion. Because the School Board did not raise that issue in a timely filed *Daubert* motion, and A.B. did not have notice of the objection and an opportunity to respond to it, I will not consider it in this order. Because the Court must perform its gatekeeping function before considering expert testimony, the School Board may seek leave to raise the issue belatedly through a motion *in limine* or an objection at trial.

*B.     Reliability of the Opinions of Drs. Vollmer, Leventhal, and Pensa.*

The next question is whether the opinions of Drs. Vollmer, Leventhal, and Pensa are sufficiently reliable as to the effect that the alleged maltreatment and abuse would have on A.B., rather than autistic children generally. Each of these experts based his conclusion on the review of medical, school and group home records, depositions, affidavits and other statements of witnesses, the complaint, investigative reports, and School Board documents, as described more specifically in the expert reports. They also viewed a videotape of A.B. while he was at school. *See* Doc. No. 93-5 (Vollmer expert report); Doc. No. 93-4 (Leventhal expert report); Doc. No. 93-2 (Pensa expert report). Additionally, Dr. Pensa spent two hours personally observing A.B. Doc. No. 95-10 – 95-12 (Pensa Depo.) at 29.[3]

Each of these experts opined that while A.B. was enrolled as a special education student at South Seminole Middle School, he was a victim of maltreatment and abuse. Each of these experts further opined that the maltreatment and abuse of A.B. will likely have long-term consequences on A.B.'s development, and has caused and will continue to cause A.B. to experience pain and suffering. *See* Vollmer expert report at 3; Leventhal expert report at 3-4; Pensa expert report at 4-5. Dr. Pensa further recommended that special living quarters be built at the home of A.B.'s mother so that A.B. may live at home with twenty-four hour staff support to attend to A.B.'s needs, as well as monthly visits from a psychologist and home schooling. Pensa expert report at 5-6.

Each of these experts is competent to render opinions regarding how the treatment received at school would affect A.B. Dr. Vollmer is a psychologist and a Board Certified Behavior Analyst. He has written and lectured extensively on the behaviors of developmentally disabled individuals,

---

[3] I refer to the original consecutive pagination of depositions when citing to deposition page numbers.

including individuals with autism. These writings include empirical, peer reviewed studies in this area. Vollmer expert report at 1, 8-35. Dr. Leventhal is a psychiatrist and a Diplomat of the American Board of Psychiatry and Neurology in both General Psychiatry and Child and Adolescent Psychiatry, and a Fellow of both the American Academy of Child and Adolescent Psychiatry and the American Psychiatric Association. He has written extensively about treatment of developmental disabilities, including autism. The focus of his current work is "on medical education, the diagnosis, etiology and treatment of early-onset childhood psychopathology, particularly autism/developmental disorders, ADHD and behavior disorders as well as the process of developing new strategies for mental health services delivery to youth . . . ." Leventhal expert report at 1-2, 37. Dr. Pensa is a clinical psychologist who has completed approximately 1700 evaluations of individuals to assess learning disabilities, autism, and developmental disorders over the last thirteen years. He has also treated patients suffering from autism or Asperger's disorder. Pensa expert report at 1, 7-10.

Based on their experience, and review of the information presented to them in this case, each of these experts opined that A.B.'s treatment at school has adversely affected and will likely continue to affect A.B adversely. For example, Dr. Vollmer wrote: "Because A.B. had previously displayed some aggressive and self-injurious behavior not unusual for a person with his condition, it is especially dangerous to expose the student to a physically and emotionally abusive environment, which is likely to make dangerous behavior persist or even get worse. . . . It is almost a certainty that Garrett, as an aggressive model, would have negatively influenced [A.B.'s] aggressive behavior." Vollmer expert report at 3. He also opined that "A.B. appears to engage in severe behavior in order to escape academic activity. Given that the academic activity was previously associated with abuse, it is likely

that he will persist in engaging in self-injurious and aggressive behavior until academic activity is no longer associated with aversive events." *Id.* at 4.

Dr. Leventhal similarly opined that if the witnesses' testimony about the treatment of A.B. is true, A.B. has had fear and anxieties and will continue to carry fear and anxieties with him for a long time.  Doc. No. 95-20 – 95-22 (Leventhal depo.) at 44.  He observed that A.B. did not "seem to be acquiring skills at a pace that [he] would expect," which would be consistent with the reports of A.B.'s treatment while at school. *Id*. at 24.

Dr. Pensa opined that yelling and cursing in the classroom, hitting A.B., and locking him in a closet would be damaging to A.B. because it undermined the stable and consistent environment needed for an autistic child to function in a classroom.  Pensa expert report at 4.  He further opined that the psychological and emotional damage to A.B. was "particularly egregious given the nature of this being a trusting relationship with a teacher." *Id.* at 5.

In *Kumho*, the United States Supreme Court recognized that "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." 526 U.S. at 156.  However, "the trial court [has] to decide whether this particular expert [has] sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Id*. (quoting 4 J. McLaughlin, Weinstein's Federal Evidence ¶ 702.05[1] (2d ed. 1998)).  The advisory committee's notes to the December 1, 2000 amendments to Rule 702 further explain this requirement, as follows:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's

> gatekeeping function requires more than simply taking the expert's word for it.

Fed. R. Evid. 702 advisory committee's note, December 1, 2000 amendments; *see also Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)(noting that neither *Daubert* nor the Federal Rules of Evidence require a court to admit opinions that are connected to existing data only by the *ipse dixit* of the expert).

Because Drs. Vollmer, Leventhal and Pensa's background, training and experience reflect that each of them is qualified to opine about the effect of mistreatment of an autistic child, and because each of them bases his opinion upon information related specifically to A.B., each of their opinions regarding the damages suffered by A.B. is sufficiently particularized to meet the standards of reliability set forth in *Daubert* and *Kumho*.

However, in some respects, Dr. Vollmer and Dr. Pensa render opinions that are not within their expertise. For example, both Dr. Vollmer and Dr. Pensa comment on the law (Dr. Vollmer opines that it is illegal to expose children to material or language that is sexually explicit, Vollmer expert report at 4, and that the employees of the School Board acted negligently, *id.* at 6; Dr. Pensa provides a legal definition of child abuse, Pensa expert report at 3) and the propriety of the actions of school administrators in response to reports of child maltreatment (Vollmer expert report at 6; Pensa expert report at 4). Accordingly, the motion is due to be granted as to opinions in these areas. Limiting Dr. Vollmer and Dr. Pensa's opinions in these respects will not undermine the admissibility of their opinions as to matters within their expertise.

### III.   CONCLUSION.

For the reasons set forth above, it is **ORDERED** that the Motion to Exclude From Evidence Plaintiff['s] Expert Testimony, doc. no. 83, is **GRANTED** to the extent that Dr. Vollmer and Dr. Pensa will not be permitted to testify about matters of law or the propriety of actions of school employees in response to reports of child maltreatment.  It is further **ORDERED** that the motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on December 29, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties